EBENEZER MERRITT, Complainant, Appellee,

*vs.*

WILLIAM D. BALDWIN, Defendant, Appellant.

APPEAL IN EQUITY FROM THE WINNEBAGO CIRCUIT COURT.

A court of equity will relieve against a judgment at law obtained by fraud.

Equity will prevent a fraudulent, corrupt, or inequitable use of a judgment at law, even though regularly obtained.

Where the court had jurisdiction of the defendant, and of the subject matter of the action, it is to be intended that the proceedings were regular, and the judgment right until the contrary appear.

And even though the proceedings were irregular the judgment will not be set aside for such cause alone.

*Semble.* It cannot be imputed as a fraud that a party proceeds to procure a judgment against his adversary by the plain provisions of the statute or the practice of the court.

*Semble.* A court of equity cannot correct a mere error of law in the proceedings of court at law.

The bill sets forth that on the 20th day of January, 1855, the defendant sued the complainant before C. Coolbaugh, a justice of the peace of Winnebago county, for damages for the breach of the conditions of a certain lease between the parties, and therein recovered judgment for sixteen dollars and eighty-seven cents, and costs; from which judgment complainant appealed to the circuit court of said county, wherein, when the cause there came on for trial, the defendant (then being plaintiff), suffered a voluntary non-suit, because the court ruled out the depositions produced by him, and on which his claim depended, for informality.

That afterwards the complainant, who at the time of the bringing of said action was a resident of the State of Illinois, removed to the State of Wisconsin, and made the town of Clayton in said Winnebago county his permanent residence;

and being absent temporararily from his family, for the purpose of settling up his affairs in Illinois, the defendant, contriving and intending to defraud complainant, commenced a suit against complainant before J. H. Smalley, a justice of the peace of said county, by summons returnable the 21st day of February, 1856; which summons was returned by the officer serving the same, endorsed to the effect that he had served the same on the 14th day of February, 1856, by leaving a certified copy at the complainant's last place of residence, with a member of his family of lawful age, to whom he had explained the contents; and that on the return day of the said summons, the said defendant, (plaintiff in that suit), appeared before the said justice, declared for the same cause of action that he did in the former action wherein he had suffered a nonsuit, and therein recovered a judgment before said justice, Smalley, for the sum of $95 damages, and $4.64 costs of suit, against complainant.

That at the time said summons was served the complainant was absent from the county, and from the state, and did not return until the first day of March, 1856, and that he had no knowledge of the suit until several days after his return; that his wife knew nothing of the service of the summons, which was delivered to a young woman temporarily residing with his family, but who was not a member thereof, and who did not disclose the fact of the leaving of the summons until after the judgment was rendered; and that neither he, complainant, nor any member of his family, had any knowledge or information of the suit until more than ten days had elapsed after the rendering of the judgment.

Complainant also denies all indebtedness to the defendant, and avers that defendant fraudulently took advantage of the complainant's absence from the state, to obtain said judgment, and used the same depositions before the justice that the circuit court had ruled out as aforesaid; that an execution had been issued on the said judgment and was in the hand of the officer

for collection;—waives an answer on oath, and prays an injunction against the collection of the judgment, and for general relief.

The answer admits the bringing of the several suits before the justice, and of the non-suit suffered by him in the first suit in the circuit court; denies that defendant knew of complainant's absence at the time of bringing the second suit, but avers that he supposed he was at home; admits the service of the summons in the second suit in the manner stated, and admits the recovery of the judgment as stated in the bill; denies that the defendant in that suit was not indebted to the plaintiff therein, and avers that the complainant was, and still is, indebted to the respondent in the sum of one hundred dollars for breaches of covenants. Denies all fraud in obtaining the judgment, or that it was obtained on the proof rejected in the circuit court, but avers that it was obtained on the testimony of witnesses named in the answer, who were not offered as witnesses in the circuit court.

To this answer the defendant filed a general replication.

Considerable testimony was taken to the merits of the case between the parties relative to the lease, and the supposed breaches thereof, which is not pertinent to the inquiry arising on the appeal; and Elizabeth Haddock was examined in reference to the service of the summons in the last suit, who testified that she was the mother-in-law of Merritt, the complainant; that there was a copy of a summons left at her house about the middle of February; she thinks a person called and asked if Mr. Merritt lived there; she told him he did; he handed her a paper, said it was a copy; she asked in whose favor and at what time; he said the 25th; she told him Merritt would not be back; he said it would make no difference; Merritt's wife lay sick at the time, and she did not expect her to live; did not tell her of the copy for fear of making her worse; she was staying at Merritt's to take care of his wife while she was sick; the man said the summons was in favor of Baldwin. She handed the copy to Merritt's daughter, between 14 and 15

years old, to hand to her father; the daughter can read writing.

The circuit court, on hearing, decreed a perpetual injunction against the collection of the judgment, and also for costs, from which judgment the defendant, Baldwin appealed to this court.

*Wheeler and Edmunds*, for complainant, appellee.

*C. Coolbaugh*, for defendant, appellant.

1st. The judgment is strictly regular. R. S., 446, § 24.

2d. If the court acquired jurisdiction of the parties, and has jurisdiction of the subject matter, the court will intend that the proceedings are regular until the contrary appears. *Baum vs. Tarpenny*, 3 Hill, 76.

3d. A court of equity will not set aside a judgment for irregularity. *Shattenkirk vs. Wheeler*, 3 John. Ch. R., 281.

4th. The circumstance that a court of law has decided a case erroneously, will not authorize a court of equity to enjoin the collection of the judgment. *Dunn vs. Fish et al.*, 8 Blackf., 407; *Simpson vs. Hart*, 1 John. Ch. R., 99; *Howley vs. Mancius*, 7 Id., 82.

5th. No decree could have been rendered for the complainant upon a bill to which a demurrer would be sustained. Mitford Pl., 129.

6th. The defendant availed himself of the privilege the statute gave him, and there is no allegation in the bill which shows fraud or irregularity in obtaining the judgment,

*By the Court*, SMITH, J. The bill in this case was filed by the complainant to enjoin perpetually a judgment obtained by the defendant against him before a justice of the peace of the county of Winnebago, for about ninety-six dollars.

The grounds upon which he predicates his claim to the relief prayed for, are,

" 1st. That the judgment was fraudulently procured by the
" complainant.

" 2d. That no service of process was ever had upon said
" defendant, sufficient to give the justice before whom it was
" obtained, jurisdiction.

" 3d. The complainant was prevented, through no laches or
" fault of his own, from making a defense to the claim in the
" justice's court, and an unjust and inequitable judgment ren-
" dered therein against him, and that the time for appealing
"from said judgment had expired before the said complainant
" had any knowledge of its rendition."

It is not necessary to cite authorities to the doctrine that it
is competent for a court of equity to relieve against a judg-
ment at law obtained by fraud ; and that a court of equity will
exercise its power to prevent a fraudulent, corrupt and inequit-
able use of a judgment at law, even though regularly obtained.

Assuming for the present that the justice obtained jurisdic-
tion of the defendant and of the subject matter of the action,
the court will intend that the proceedings were regular and
the judgment right, until the contrary appears. 3 Hill, 76.
And though the proceedings may have been irregular, the
judgment will not be set aside for such cause alone. 3 John.
Chy. R., 281 ; 2 Dow. & R., 526.

The acts of the defendant on which the charge of fraud in
obtaining the judgment is based, consist in the fact that he had,
before the commencement of the suit in which the judgment
was rendered, commenced a suit for the same cause of action—
for the breach of the covenants of a certain lease between the
parties, executed in June, A. D. 1851 ; that having obtained a
judgment of sixteen dollars, from which the complainant
appealed to the circuit court of Winnebago county, and when
the cause came on for trial, the material testimony of the plaintiff
was ruled out, whereupon "he withdrew a juror, and submitted
to a non-suit; and that afterwards he commenced another suit
for the same cause of action, when the complainant was absent
from the state, before a justice of the peace, and introduced
before him the same evidence which had been adjudged incom-

petent in the circuit court; that this trial was *ex parte*, the defendant taking advantage of the complainant's absence from the state."

That the complainant was absent from the state at the time of the trial is true, and of that we shall speak presently.

It appears that on the trial in the circuit court of the first suit, founded upon the breach of the covenants of a certain lease between the parties, the plaintiff, Baldwin, now defendant, offered in evidence a sworn copy of the lease, (the latter having been deposited by the parties with one Capron, in the state of Illinois, for safe keeping,) instead of having taken the deposition of Capron, with a copy of the lease attached. The circuit court decided such copy to be incompetent evidence; and that being the foundation of the action, he withdrew a juror, or took a voluntary non suit. It is further alleged that on the trial of the second suit, before the justice, Baldwin introduced the same sworn copy of the lease, which had been rejected by the circuit court in the former suit, which was admitted by the justice.

If the proof were as the complainant alleges, it would afford no presumption of fraud. The objection taken to the introduction of the copy of the lease in the circuit court was merely technical. It was a copy, incorporated in the deposition of Capron, instead of the original attached; and although in the form presented it may have been properly rejected, it would have afforded no ground for the interference of a court of equity had the circuit court erroneously admitted the sworn copy. How then can a court of equity correct an error of the same kind committed by the justice? There is no pretence that the paper offered, embodied in the deposition of Capron, was not a true copy, or that there were any endorsements, receipts, modifications or alterations suppressed. The only objection is, that it was not presented in precise legal form. If it was a true and full copy, and there is no pretence that it was not, how is it possible that the complainant could have been injured? Courts of equity were not instituted for the purpose of correcting mere technical errors of justices of the peace in the

introduction or admission of evidence. The merits of the case could not have been affected in the slightest degree whether the original lease or an exact copy was presented to him. The defendant was guilty of no fraud, because the copy presented the truth of the covenants equally with the original. It may be remarked, in passing, that it is quite doubtful whether the bill would admit this proof, but we have chosen to consider it in all its amplitude, and can discover no sign or badge of fraud in the facts urged in the first point, nor any matter which deserves the consideration of a court of equity.

We pass to the second point raised by the complainant, viz: "That no service of process was ever had upon said defendant "sufficient to give the justice before whom the suit was tried "jurisdiction of the defendant therein."

This objection, if well founded, might, perhaps, under some circumstances afford ground for equitable relief, though it might well be replied that in such case the judgment would be utterly void, and a complete remedy at law would be open to the complainant for any injury he might suffer from an attempt to enforce it. But without deciding whether or not such is the case, or whether a court of equity could interfere in a case of the kind, we prefer to consider the merits as the pleadings and proofs present them. And we are constrained to say that we are unable to sustain the complainant's bill upon any view which we have been able to take of the case.

As before remarked, courts of equity will relieve against judgments at law obtained by fraud. But there is nothing in the proofs in this case which shows that the defendant was guilty of any fraudulent practices in procuring service of the summons issued by the justice. The complainant in his bill says that he moved from the state of Illinois to the county of Winnebago in this state, " in the month of June, 1856, *with his family*, and made the town of Clayton in said county his *permanent residence*." The bill further alleges that the officer returned the summons, (returnable February 21st, 1856), endorsed to the effect that he had served the same on the complainant on the 14th day of February, 1856, by leaving a certi-

fied copy at the complainant's last place of residence, with a member of his family of lawful age, to whom he explained the contents. The bill also alleges that the copy was delivered to a young woman who was temporarily residing with his family, but who was not a member of his family, who was ignorant of the nature of the summons, and did not disclose the fact of its reception until after judgment was rendered. The proof is that the copy was left with the mother-in-law of the complainant, he being absent, and she did not disclose the fact of its reception to the complainant's wife on account of her severe illness. The defendant in his answer denies that he knew of the complainant's absence and says that he supposed he was at home. There is no proof to show that he did know of the complainant's absence, or used any means to prevent the knowledge of the suit from coming to him. It may have been the misfortune of the complainant that he was absent at the time, but certainly there is nothing to prove fraud upon the defendant.

The service was good according to our statute. The complainant in his bill says that he had permanently located his family in the town of Clayton. The service was made by leaving a copy with his mother-in-law, and we do not see but that all the requirements of the law were fulfilled, and we think that there is an utter want of evidence, (if not of averments in the bill), to convict the defendant of fraud. This must be done before a court of equity can interfere to set aside or perpetually enjoin a judgment at law.

It may be proper to remark that the manner in which the first suit was disposed of, was sufficient to warn the complainant that another attempt would be made. There was no trial upon the merits, but the suit failed on account of technical imperfections in the form of the evidence offered. We cannot here review the merits of the judgment before the justice. It is presumed to be correct.

The decree of the court below must be reversed, and the complainant's bill be dismissed with costs.