HOLDEN VS. MEADOWS and others.

EQUITY JURISDICTION: *How far it extends as to matters determined in probate courts.* — *Laches.*

1. A court of equity may relieve against frauds in the settlement of probate accounts (*McLachlan v. Staples*, 13 Wis., 448); and against fraudulent conveyances executed by administrators under license (*Bassett v. Warner*, 23 Wis., 673); but whether it has jurisdiction to relieve against the probate of a will obtained by fraud, *quaere*.

2. Equity will not relieve in a case of fraud if plaintiff has been guilty of gross *laches* or unreasonable delay in applying for such relief.

3. A party interested who, having reasonable grounds for believing that a will was obtained fradulently, or by undue influence, or *when the testator had not testamentary capacity*, did not take steps to prevent the probate of the will, nor attempt to have it set aside until after five years, *held.* guilty of *gross laches.*

4. The complaint in an action to set aside a will, etc., avers that by reason of the softening of his brain, the testator's "memory and mental faculties had become *almost wholly obliterated*," and that he had been in that condition for many months before the will was made, and died a few weeks after its execution. *Held*, that upon these averments the testator cannot be regarded as having had, at the time, testamentary capacity.

5. Even if the testator had testamentary capacity, yet if plaintiff (his wife) knew that his mental condition was such that he was very liable to be imposed upon, and knew also, or might have known, that the will was unfavorable to her, these circumstances were sufficient to create a reasonable suspicion of fraud or undue influence, and she should have disclosed the facts to the probate judge, and required all persons who might reasonably be supposed to know anything of the circumstances under which the will was executed, to appear and testify on the hearing of the petition for probate thereof; and having failed to do so, or to make any effort to discover the fraud, and having acquiesced in the validity of the will for five years, she must be held guilty of gross *laches.*

APPEAL from the Circuit Court for *Walworth* County.

This action was brought in May, 1871, to revoke and annul an instrument purporting to be the last will and testament of Simeon Holden, late of Walworth county, deceased, and to set aside the probate thereof and all subsequent proceedings thereon. The defendants demurred to the complaint, and assigned all the grounds of objection thereto enumerated in sec. 5, ch. 125, R. S., except the objection that the court had no jurisdiction of the persons of the defendants. The plaintiff appealed from an order of the circuit court sustaining the demurrer.

The complaint is quite long, but a brief statement of its contents will suffice to present the questions raised by the demurrer. It appears from it that on or about March 30th, 1866,

Simeon Holden executed such instrument purporting to be his last will and testament, in due form of law, and deposited the same with the defendant *Mather*, in and by which he devised to the plaintiff, who was his wife, all of his real estate (consisting of the homestead of himself and the plaintiff in said county, of the value of about $600), and the interest on $4,500 during her natural life ; and all the residue of his estate, which consisted of money at interest, and amounted in all to $25,000, he bequeathed to his daughter, the defendant *Elizabeth H. Meadows*, who was then unmarried, but who afterwards intermarried with the defendant *George Meadows*. *Elizabeth* was the daughter of the deceased by a former wife, and was his only child. In and by said instrument *Mather* was appointed executor thereof.

Holden died about May 6th, 1866 ; and very soon after, *Mather* presented such instrument to the judge of the Walworth county court for probate, and such proceedings were thereupon had that on the 30th of May, 1866, the same was admitted to probate as the last will and testament of the deceased. *Mather* qualified as executor, and in June of the same year letters testamentary were duly issued to him by said court. He thereupon entered upon the discharge of his duties as executor, paid over to the defendant *Elizabeth* the portion of the estate to which she was entitled by the terms of the will, and, as directed by the will, retains in his hands the $4,500, or the securities therefor, which is the principal of the annuity thus bequeathed to the plaintiff. He also foreclosed a mortgage which belonged to the estate, and the mortgaged premises were purchased by *Elizabeth* on the foreclosure sale. It is neither admitted nor denied that *Mather* has paid such annuity to the plaintiff, but she offers to return and surrender everything which she has received under the provisions of the will.

The complaint contains the following averment: " And this plaintiff further alleges, that for a period of about two years before the execution of the said supposed will, said Simeon Holden had been afflicted with the disease of softening of the

brain; that for several months before the execution of said supposed will, his mind had become affected by said disease to that extent that his memory and mental faculties had become almost wholly obliterated; and that at the time of executing said supposed will he was in fact imbecile." It then proceeds to state, with much particularity, many circumstances, not necessary to be repeated here, which, if true, demonstrate that *Mather*, instigated thereto by *Elizabeth* and her present father-in-law, took advantage of the imbecility of the deceased, and corruptly and fraudulently induced him to execute such will, although the deceased did not understand or comprehend the effect thereof. It is also averred that the will was formally read over in the presence of the deceased; and further, that *Mather* had been for many years his intimate, confidential friend and trusted adviser in his business affairs.

The complaint also charges that the order admitting the will to probate was fraudulently procured. The following is the averment on that subject: "That at the time of presenting said will to said county judge, and procuring said order, said *Mather* well knew that said instrument was not a valid will, and that its execution was procured wholly by the fraudulent means above stated; and that he fraudulently concealed from said county judge, and from the said plaintiff, the said fraudulent means, and thereby fraudulently procured the making of the said order."

The following is the statement in the complaint concerning her knowledge of the alleged frauds: "And the said plaintiff further alleges that she had no knowledge or information of any of the facts or circumstances herein before set forth, under which the said supposed will was procured to be executed and admitted to probate, until within the past seven days."

*Palmer, Hooker & Pitkin*, for appellant, argued that the mere imbecility of the testator did not, perhaps, incapacitate him from making a valid will; but, he being of weakened and imbecile mind, the imposition and influence used to induce him to exe-

cute the will were acts of the grossest fraud.   2. The plaintiff has no remedy in the county court.   The time within which an appeal could be taken from the order of that court, has expired (R. S., ch. 117, sec. 24); as has also the time within which a petition to the circuit court might be filed under secs. 29, 30, ch. 117, R. S., and ch. 12, Laws of 1868.   And if it be true that the county court would still sustain a motion to vacate the order probating the will and appointing an executor, this is no reason why plaintiff should not have the relief here sought; because, (1.) Such a motion would be in the nature of a proceeding in equity; and where such a motion would be entertained, a bill in equity will lie.   (2.) The county court has no jurisdiction over the property sought to be reached which has passed out of the hands of the executor.   3. The circuit court has jurisdiction to grant the relief sought.   *Bassett v. Warner*, 23 Wis., 684; *McLachlan v. Staples*, 13 id., 448.   It is well settled that equity will relieve against judgments procured by fraud.   *Stowell v. Eldred*, 26 Wis., 504.

*Finches, Lynde & Miller*, for respondents, contended that the probate court has exclusive original jurisdiction of the probate of wills, and its decision is final unless reviewed in the manner provided by law (Story's Eq. Jur., § 184; Hermann on Estoppel, 133; R. S., ch. 97, secs. 14, 15, 18–21; ch. 98; ch. 117, secs. 1, 5, 24, 29, 30, 34); that a will of personal property, once admitted to probate by the proper court, cannot be annulled or set aside by a bill in equity, although fraudulently procured (2 How. U. S., 619; 1 Paige, 171; 2 id., 396; 1 Coldw., 288; 4 id., 70; 27 Tex., 173; 20 Cal., 233; 1 Johns. Ch., 153; 1 Edw., 260; 9 Pet., 180; 29 Md., 24; 6 Ired. Eq., 248; 1 Bradf., 360; 13 Rich., 196; 3 Story, 1; 8 N. H., 124; *Allen v. McPherson*, 1 House of Lords Cases, 191, and authorities there cited); and that, upon the allegations of the complaint, plaintiff must be held to have been guilty of gross *laches* in failing to resist the probate of the will, or to take any steps to set it aside before the commencement of this action.

The following opinion was filed at the January term, 1872.

LYON, J. I. It is a well settled doctrine that it is competent for a court of equity to relieve against a judgment obtained by fraud. This doctrine has frequently been recognized and acted upon by this court. *Merrit v. Baldwin*, 6 Wis., 439; *Huebschman v. Baker*, 7 id., 542; *Ableman v. Roth*, 12 id., 81; *Stowell v. Eldred*, 26 id., 504.

II. But it is urged that the case where the probate of a will has been obtained by fraud is an exception, and that in such case a court of equity has no power to relieve against the judgment or order of the probate court admitting the will to probate, although the same was fraudulently obtained. It must be conceded that the authorities which sustain this view are very numerous both in the United States and England. It is sustained also by Judge STORY, in 1 Eq. Jur., § 184, and many of the authorities are referred to in the notes to that section. The reason for this exception is not very apparent, and as was said by Judge STORY in *Gould v. Gould*, 3 Story's R., 516, it has been thought to stand more upon authority than upon principle. Thus, in *Gaines and wife v. Chew*, 2 How., 619, it is said: "In cases of fraud, equity has concurrent jurisdiction with a court of law; but in regard to a will, charged to have been obtained through fraud, this rule does not hold. It may be difficult to assign any very satisfactory reason for the exception. That exclusive jurisdiction over the probate of wills is vested in another tribunal, is the only one that can be given." Two cases decided by this court are cited as establishing a different doctrine. These are *McLachlan v. Staples*, 13 Wis., 448; and *Bassett v. Warner*, 23 id., 6 . Also the case of *Tebbets v. Tilton*, 4 Foster, 120, is cited for the same purpose. Neither of these cases relates to the probate of a will. In *McLachlan v. Staples*, a bill in equity was sustained, which was filed for the purpose of setting aside certain fraudulent accounts which the executors had

procured to be allowed in their favor against the heir of their testator. In *Bassett v. Warner* the action was to set aside certain fraudulent conveyances made by the administrator under licenses granted by the proper probate court; and it was held that the action could be maintained. In *Tebbets v. Tilton*, the plaintiff, in an action against the administratrix to recover a debt of her intestate, was allowed to impeach the inventory returned by her to the probate court, for fraud, although an order had been previously made by the probate court, pursuant to a statute, discharging her from all claims of the creditors of the estate. There can be no doubt that a court of equity has jurisdiction to relieve in cases of fraud in the settlement of probate accounts. It was so held in *Pratt v. Northam*, 5 Mason C. C., 95; and *Gould v. Gould, supra.*

The cases cited by the defendant fail to show, therefore, that a court of equity has jurisdiction to relieve against the probate of a will obtained by fraud. It was thought advisable to submit these general remarks upon the question under consideration; but, inasmuch as we think there is another principle of equity jurisprudence that is conclusive of the case, we do not decide whether the decree of the county court admitting the will to probate may or may not be reviewed in this action by reason of the frauds charged in the complaint.

III. The principle just mentioned is, that " a court of equity will never entertain a bill for relief, even in cases of asserted fraud, if the plaintiff has been guilty of gross *laches* or unreasonable delay." *Gould v. Gould, supra* (p. 537). The rule is elementary, and of universal application in actions like this. See also *Stowell v. Eldred, supra.* We think that the plaintiff has been guilty of unreasonable delay in asserting her alleged rights, and will proceed to suggest some of the considerations which impel us to that conclusion:

1. It appears from the complaint that the deceased was entirely wanting in testamentary capacity when he executed the alleged will—indeed that he was very nearly idiotic, and

that his mental condition must have been well known to the plaintiff at the time.

2. The complaint does not deny that the plaintiff had due notice of the hearing before the county court when the will was admitted to probate, and, in the absence of such denial, we must presume the notice. And she was necessarily informed thereby of the existence of an instrument purporting to be the last will and testament of her late husband.

3. Knowing these facts, it was clearly her duty, in the exercise of common and ordinary diligence, to acquaint herself with the contents of the will, to inform the county judge of the mental condition of the testator at the time it purports to have been executed, and to contest the probate thereof. She failed entirely to do so, and permitted the will to be proved without objection.

4. But, conceding that no negligence can be imputed to the plaintiff for not contesting the probate of the will, it appears that before the time to appeal from the order admitting it to probate had expired, letters testamentary were issued to the executor, and he took possession of the estate, which consisted principally of securities or obligations for money loaned. It is reasonable to believe that the plaintiff knew that he did so, if she did not turn out the same to him. At that time she must have known the contents of the will. Yet she failed to appeal.

5. She had still another opportunity to review the order, within a year after it was made, by applying to the circuit court, and excusing her previous failure to appeal. R. S., ch. 117, sec. 29. She neglected to avail herself of that opportunity, but permitted the executor to go on and settle or nearly settle the estate, raising no question, so far as appears, of the validity of the will, permitting all parties interested to act on the faith of it, and very probably acting on the faith of it herself, until nearly five years had elapsed, and then she brought this action. A statement of these facts is sufficient to show

that the delay was unreasonable, unless she has satisfactorily excused it.

6. The only excuse she offers for such delay is, that when she commenced this action, she had but just learned of the facts and circumstances stated in the complaint, under which the will was procured to be executed and admitted to probate. This is not a good excuse for her delay, for the reason, as before stated, that she knew from the first of the existence of one fact which rendered the will invalid, and would have prevented the probate of it had she asserted the same at the proper time. That fact was the almost idiotic state of the testator's mind. Of what importance is it then, that she was ignorant of other facts, which, had they been known to her and proved before the county court, would have produced the same result? Had she known the will had been fraudulently obtained, she could have asserted no right nor obtained any advantage that she could not have asserted or obtained by using the knowledge which she did possess. Besides, the fact that her husband, in his then mental condition, had executed a will, was sufficient to suggest to any sensible person the idea that he was induced to execute it by some undue influence or other fraudulent means, and was enough to put any person interested adversely to such will upon inquiry as to the means used to accomplish the purpose. The plaintiff does not claim to have exercised the slightest diligence in that respect.

Upon the whole case we are of the opinion that the complaint shows that the plaintiff has been guilty of such unreasonable delay in asserting her alleged rights, that she has lost her standing in a court of equity, and cannot be permitted in this action to attack the validity of her late husband's will, or of the order of the county court admitting the same to probate. In other words, we think the complaint fails to state a cause of action.

It follows that the order of the circuit court, sustaining the demurrer to the complaint, must be affirmed.

*By the Court.* — Order affirmed.

The appellant moved for a rehearing, and the following opinion upon that motion was filed at the June term, 1872.

LYON, J. In their argument in support of the motion for a rehearing, the learned counsel for the appellant sharply criticize the statement in the foregoing opinion to the effect that the complaint shows that the deceased had not testamentary capacity when he executed the alleged will; and they insist that, if the court was mistaken in that particular, the decision is necessarily erroneous. After a careful review of the case, we are still of the opinion that the plaintiff was guilty of gross *laches*, even though it be conceded that the testator possessed testamentary capacity when he executed the paper purporting to be his will. The plaintiff knew that his mental condition was such that he was very liable to be imposed upon; she knew, or might have known, that the will was unfavorable to her; and those circumstances were sufficient to cause a reasonable suspicion that it had been obtained by some undue influences exerted by some person or persons over the mind of the testator, or, in other words, that the will was fraudulently obtained. The exercise of reasonable diligence by the plaintiff, under those circumstances, would have led her to investigate at once the facts connected with the making and execution of the will; and the most natural, and probably the most effectual, way to do this would have been for her to have informed the county judge of the condition of the testator's mind, and to have required all persons who might reasonably have been supposed to know anything relative to the circumstances under which the will was executed, to appear and testify on the hearing of the petition that the same be admitted to probate. It is highly probable, that, if the will was fraudulently procured, such a course would have exposed the fact and defeated the probate of the will. Failing to adopt that course, and failing, so far as appears, to make any effort whatever to discover the fraud which she had every reason to believe had

been perpetrated upon the testator and upon herself, but acquiescing in the validity of the will for five years, it must be that *laches* is imputable to her, whether the testator had or had not testamentary capacity.

But it is not conceded that the complaint shows that the testator, when he executed the will, had testamentary capacity. Upon the authority of *Stewart's Executor v. Lispenard*, 26 Wend., 255, it is claimed that if the testator was not totally deprived of reason when he executed the will — if he then had any understanding, no matter how weak it might have been — he had testamentary capacity. That case so held; and, on the authority of it, the cases of *Blanchard v. Nestle*, 3 Denio, 37, and *Newhouse v. Goodwin*, 17 Barb., 236, cited by counsel for the appellant, and some other cases in New York, were decided.

But the authority of these cases has been greatly shaken in that state, if not entirely overruled, by the decision of the court of appeals in *Delafield v. Parish*, 25 N. Y., 9, where the subject of testamentary capacity received great consideration, and is most ably discussed by several of the judges. Judge DAVIES, who wrote the leading opinion, after a somewhat extended review of cases on the subject, gives his conclusions in the following language: "We have held that it is essential that the testator has sufficient capacity to comprehend perfectly the condition of his property, his relations to the persons who were, or should or might have been, the objects of his bounty, and the scope and bearing of the provisions of his will. He must, in the language of the cases, have sufficient active memory to collect in his mind, without prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in relation to them." p. 29.

SELDEN, Ch. J., who delivered a dissenting opinion in the same case, speaking of the capacity of the testator to make a valid will, says: "It is not enough that he should be found to

Holden vs. Meadows and others.

have possessed some degree of intelligence and mind. He must have had sufficient mind to comprehend the nature and effect of the act he was performing, the relation he held to the various individuals who might naturally be expected to become the objects of his bounty, and to be capable of making a rational selection among them." p. 105.

The same rules of law were laid down by Chancellor WALWORTH in *Clark v. Fisher*, 1 Paige, 171, decided before the case of *Stewart v. Lispenard.* The chancellor there said: "The general principles in relation to the capacity of a person to make a will are well understood. He must be of sound and discerning mind and memory, so as to be capable of making a testamentary disposition of his property with sense and judgment, in reference to the situation and amount of such property, and to the relative claims of different persons who are or might be the object of his bounty."

In *Converse v. Converse*, 21 Vt., 168, Judge REDFIELD states the law as it is stated in the foregoing quotations. Indeed that portion of Judge DAVIES' opinion which refers to the language of the cases, is copied from the opinion in *Converse v. Converse.*

The cases, both English and American, which hold the same doctrine, are very numerous. It is not my purpose to review them. The doctrine is so reasonable and just, and commends itself to the approval of the judgment so readily, that neither labored arguments nor citations of numerous authorities are necessary to sustain it. We unhesitatingly accept the foregoing views of Judges REDFIELD, DAVIES and SELDEN, and of Chancellor WALWORTH, as correct statements of the law concerning what is, and what is not, testamentary capacity.

See 1 Redfield on Wills, Ch. IV., Title "*Mental Capacity to execute a valid Will*," where many of the cases on this subject are referred to. The following later cases hold the same doctrine: *St. Legers' Appeal*, 34 Conn.; 434, following *Kinne v. Kinne*, 9 id., 102; *Aiken v. Weckerly*, 19 Mich., 482, following

*Beaubien v. Cicotte*, 12 id., 459; *Bates v. Bates*, 27 Iowa, 110; *Stancell v. Kenan*, 33 Ga., 56 (cited from Digest).

Applying the law as here laid down to the case of Simeon Holden, it cannot be successfully, or even plausibly, claimed that he possessed testamentary capacity when he executed the alleged will. For surely a man who, by reason of the softening of his brain, had nearly lost his memory and mental faculties — in the language of the complaint, whose "memory and mental faculties had become *almost wholly obliterated*,"— and who had been in that condition for many months, and, as the result proved, was within a very few weeks of the termination of his life, cannot be held to " have sufficient active memory to collect in his mind, without prompting, the particulars or elements " of his will, that is, the situation and amount of his property, and the relative claims of those who might naturally be expected to be the objects of his bounty, and to hold these elements in his mind a sufficient time to perceive their relations to each other. To do this would require an effort of mind and memory of which Mr. Holden, when he executed the alleged will, was utterly incapable.

It has been deemed proper to submit these few observations on the subject of testamentary capacity, because of the course which the argument of the case and of the motion for a rehearing has taken, and to the end that the record might show more fully the grounds on which the opinion was predicated, that the complaint shows that the testator had not that sound and disposing mind and memory, without which a valid will cannot be made.

*By the Court.* — Motion denied.