### WILL OF FARNSWORTH.

*February 9 — March 3, 1885.*

*Wills — Mental capacity — Undue influence.*

1. It is essential to a valid will that the testator should have comprehended, when he executed it, the relation he held to the various individuals who might naturally be expected to become the objects of his bounty, and should have been capable of making a rational selection among them.
2. A finding that the instrument in question was executed under and by reason of undue influence and deception exercised upon the aged and weak-minded testatrix by her violent and brutal son, is *held* to be sustained by the evidence.

APPEAL from the Circuit Court for *Dodge* County.

Susan Farnsworth died June 19, 1884, at the age of about eighty years. Subsequently an instrument in writing, executed by her with all the formalities required by the statute of wills, and purporting to dispose of her whole estate, was presented to the county court of Dodge county for probate as her last will and testament. The instrument bears date and was executed May 14, 1884. Probate thereof was contested by some of the heirs of Mrs. Farnsworth, and the court refused to admit it to probate. From the order of the county court in that behalf, an appeal was taken to the circuit court by her son, *Wesley Owen.* After a protracted hearing the court found that such instrument was executed "under and by reason of undue influence and deception exercised upon her by her son, *Wesley Owen,*" and that, at the time of its execution, Mrs. Farnsworth was of very weak mind. Thereupon the circuit court affirmed the order of the county court refusing to establish such instrument as the last will and testament of the deceased. From such order, or judgment of affirmance, *Wesley Owen* appeals to this court. A sufficient statement of the testimony on the hearing in the circuit court will be found in the following opinion.

For the appellant there was a brief by *Edward Lowth* and *E. P. Smith*, and oral argument by *Mr. Smith*.

For the respondents there was a brief signed by *L. T. Fribert* and *J. B. Hays*, attorneys, and *P. G. Lewis*, special guardian of infant respondents, and the cause was argued orally by *Mr. Hays*.

LYON, J.   The estate left by Mrs. Farnsworth consisted of a farm containing eighty acres, situated in the town of Oak Grove, Dodge county, and some personal property, of the value in all of eight or nine thousand dollars.   She had been married twice, first to one Owen, by whom she had seven children, and after his death to Reuben Farnsworth, who died several years ago.   She had no children by the second husband.   When the instrument of May 14, 1884, was executed, but three of her children were living, to wit, Freelove Newberry, Jane Vesper, and *Wesley Owen*, the appellant.   The other four children had deceased before that time, but there were then living six of their children,— grand-children and heirs of Mrs. Farnsworth.

Six or seven years before her death, Mrs. Farnsworth executed a will in which she bequeathed the greater portion of her property to her daughter Jane Vesper, but made some provision for her daughter Mrs. Newberry, and for her son *Wesley* and his children.   Soon afterwards, probably about a year later, she executed a second will, by which she gave all her property to her two daughters, the greater portion to Jane.   About a week later, by the intercession of friends in behalf of *Wesley*, she executed a third will by which she gave *Wesley* a small annuity,— either $20 or $60,— and bequeathed the balance of her estate to her daughters, the greater portion thereof to Jane, as in the other wills. These wills were all drawn by Mr. Fribert, who had been the legal adviser of Mrs. Farnsworth for many years, and had transacted much legal business for her.

Mr. Fribert testifies she gave as reasons for disinheriting *Wesley* in the second will that "he has treated me in the most dreadful manner; he has got so much of the property, he ought not to have a cent." There is abundant evidence that she had rational reasons for preferring her daughter Jane in the disposition of her property, which were entirely satisfactory to her. It cannot be doubted that when these respective wills were executed Mrs. Farnsworth possessed a sound and disposing mind and memory, and that they expressed her deliberate and unbiased judgment and intentions in the premises. When the third will was executed the two former wills were destroyed. The third will remained in Mr. Fribert's possession until a year or a year and a half before the death of Mrs. Farnsworth, when, at her request, he returned it to her. The instrument of May 14, 1884, was drawn by Mr. Lowth at the house of Mrs. Farnsworth, and in accordance with directions given by her. It does not appear that Mr. Lowth had ever before acted as her legal adviser. He went there for that purpose at the request of *Wesley*.

For two years or more before her death Mrs. Farnsworth was crippled, and could not walk, and during the last three months of her life she was unable to lie down. The foregoing facts are abundantly proved; indeed, they are scarcely controverted. The testimony concerning the mental condition of Mrs. Farnsworth, when she executed the instrument of May 14, 1884, and before that time, and relating to the alleged undue influence of the appellant in procuring her to execute it, is very voluminous, and, in many respects, quite conflicting. We shall attempt no analysis of such testimony, but content ourselves with a general statement of the facts, which, after a very careful examination of the testimony, we are satisfied the circuit judge was justified in finding proved.

As to her mental condition, but little need be said. The circuit court did not find her incompetent to make a will.

The fair inference is that the court found her competent. Yet it is a noticeable fact that when the instrument of May 14, 1884, was drawn, she named her three surviving children to Mr. Lowth, and said they were all the heirs she had, thus forgetting or ignoring the fact that she then had six living grandchildren, who were also her legal heirs. One of the essential requisites to a valid will is that the testator must have comprehended, when he executed it, the relation he held to the various individuals who might naturally be expected to become the objects of his bounty, and must have been capable of making a rational selection among them. *Holden v. Meadows*, 31 Wis. 284, 294. If Mrs. Farnsworth was then unable to recall the fact that among her heirs were children of her deceased children, it is very doubtful whether she was competent to make a valid testament. But, however this may be, the proof is overwhelming that her mind at that time was very weak, and consequently that she could the more easily be influenced. This is all the circuit court found in that behalf. The subject of testamentary capacity has been quite fully considered in several cases in this court, and nothing can profitably be added here to what has been said in those cases. *Holden v. Meadows, supra; Chafin Will Case*, 32 Wis. 558; *Will of Jenkins*, 43 Wis. 610; *In re Will of Blakely*, 48 Wis. 294; *In re Lewis's Will*, 51 Wis. 104; *Will of Cole*, 49 Wis. 179; *Will of Smith*, 52 Wis. 543; *Ballantine v. Proudfoot, ante*, p. 216.

The question of undue influence will now be considered. It has already been stated that by the three .former wills Mrs. Farnsworth bequeathed the bulk of her property to her daughter Jane; also that she gave rational reasons, satisfactory to herself, for so doing. She also, in those wills, practically disinherited *Wesley*, and gave cogent and satisfactory reasons therefor. It seems to have long been her purpose to give the most of the property to Jane. The testimony tends to show that when *Wesley* learned the contents

of those wills, particularly the third one, he violently up-
braided his mother for the disposition she had made of her
property.    The occasions were numerous, running through a
series of years, that he addressed to her violent, profane, and
abusive language on the subject of her will, and that he re-
peatedly threatened her with personal violence; indeed, that
he did commit assaults and personal violence upon her more
than once, and that on one occasion he was sent to prison
for striking her.    His mother received the injury which
crippled her for life when she was fleeing from the antici-
pated violence of her son.    And the testimony tends to show
that these acts of outrage and violence on his part continued,
and were often repeated, long after she had become practi-
cally helpless by reason of her injuries and the infirmities
of her advanced age; and further, that because of them she
procured the third will from Mr. Fribert and destroyed it
for the purpose, as she said, of obtaining peace.    If the tes-
timony tending to prove these facts is true, human language
is inadequate justly to characterize the infamy of the appel-
lant's conduct toward his aged and helpless mother.    The
effect upon her future acts of his persistent brutality cannot
be overrated.    The fact that his conduct towards his mother,
because she had disinherited him, was, at times, brutal, is
overwhelmingly proved; but it is sought to palliate it in
some degree by claiming that he was drunk when he com-
mitted these outrages.    That is no palliation whatever.    He
was undoubtedly an habitual drunkard, but that only fur-
nishes another reason why his mother should refuse to
intrust any portion of her estate to his keeping.

This is not all.    The testimony tends to show that he
frequently denounced his sister Jane to his mother and others
as a woman of bad character, and that his mother believed
his statements to be true.    He even went so far as to impeach
her legitimacy, and insinuated that her father was a negro.
These imputations were not proved; yet he said to several

Will of Farnsworth.

persons, after the instrument of May 14, 1884, was executed, that his mother changed her will because of Jane's bad conduct. ·

The circuit judge saw the witnesses and heard them testify. Most of them resided in the same county in which the judge resides, and presumably he knew many of them personally. He had every possible facility for determining the credibility of all the witnesses. If he believed the testimony which tended to prove the facts above stated, as he doubtless did, his finding was inevitable that the instrument propounded as the last will and testament of the deceased was procured by the undue influence of her son, and hence that it was not her will. The same observations, probably, are applicable to the county judge. The rule, invoked by the learned counsel for appellant, that threats, violence, and undue influence, long past, and not shown to be in any way connected with the testamentary act, will not impeach it, has no application here; for under the evidence the conclusion is irresistible that such conduct by the appellant did influence Mrs. Farnsworth to execute the instrument of May 14, 1884.

Under the well-settled rule of this and other courts, that the findings of fact of the trial judge will not be disturbed unless there is a clear and satisfactory preponderance of evidence against them, we cannot disturb the finding of undue influence in this case.

*By the Court.*— The judgment of the circuit court is affirmed.