BLANCHARD and others *vs.* NESTLE.

Mere imbecility of mind in a testator, however great, will not avoid his will, provided he be not an idiot or a lunatic.(*a*)

The term *unsound mind* in the statute concerning wills, is of the same signification as *non compos mentis;* and any one otherwise competent, to whom these terms do not apply, may make a valid will. The first paragraph of the marginal abstract of the case of *Stewart's executor* v. *Lispenard,* (26 *Wend.* 255,) examined and approved.

One has a right, by fair argument, or persuasion, to induce another to make a will in his favor. *Per* JEWETT, J.

So a will cannot be impeached on the ground that a devisee, at the time it was drawn, reminded the testator of what he had before stated as to his intended disposition of portions of his property.

EJECTMENT for an undivided half of a house and lot in Albany, tried at the Albany circuit in April, 1844, before PARKER, C. Judge. M. Gill was seized of the premises at the time

(*a*) The same principle was applied to a *deed,* in the case of *Osterhout* v. *Shoemaker and another,* decided at this term, but which it is not thought necessary to report at length. The defendants made title under a conveyance executed by A. Osterhout, against whom a commission of lunacy had issued, and who was found by the inquisition to have been of unsound and imbecile mind from his nativity. Both parties gave evidence respecting the state of mind and degree of capacity of the grantor. The judge charged the jury that in order to avoid the deed the plaintiffs must show that the grantor was *non compos mentis* at the time of its execution, within the legal meaning of the term: that there must have been a total and entire and not a partial want of reason and understanding in order to authorize the avoidance of the deed: that unless the testimony showed the grantor to have been an idiot, or lunatic, or entirely deprived of reason and understanding at the time of the execution of the deed, the plaintiff had failed to sustain the action. The jury found for the defendants, thus affirming the validity of the deed. The plaintiff moved for a new trial on a bill of exceptions, but the motion was denied. BRONSON, C. J., in delivering the opinion of the court, said: " Our law does not distinguish between different degrees of intelligence. It does not deny to a man of very feeble mind the right to make contracts and manage his own affairs. In the absence of fraud, proof of mere imbecility of mind in the grantor, however great it may be, will not avoid his deed. There must be a total want of understanding." In addition to the authorities referred to in the principal case, the chief justice mentioned *Odell* v. *Buck,* (21 *Wend.* 142,) and *Petrie* v. *Shoemaker,* (24 *id.* 85.)

o his death, which took place on the 10th day of February, 1841. By his last will and testament executed four days before his death, he devised the premises in fee to his daughter Caroline Nestle, the wife of the defendant. The plaintiffs are the children of Elizabeth Blanchard, a daughter of the testator whom he survived, and are his only other descendants, and claimed to recover as his heirs at law. The only question in the cause related to the validity of the will, which was attacked by the plaintiffs on the ground that the testator was not of sound mind; or if he was, that it was procured by undue influence exerted over him by his daughter Mrs. Nestle and her husband the defendant. The subscribing witnesses, three in number, were examined and testified respectively that the testator was of sound mind when the will was executed, and there was other testimony to the same effect. On the other hand several witnesses were examined on behalf of the plaintiffs, whose testimony tended to prove that the testator was then unable to transact business by reason of weakness both of body and mind; and it was shown that about that time the defendant had written a letter representing that the testator was in a state of great physical debility, and in effect that he had become imbecile in mind. It appeared that the will was in part written by Mrs. Nestle from the dictation of the testator, and executed in her presence, and there were other circumstances connected with its execution which the plaintiffs claimed afforded evidence that an improper influence had been exerted over his mind by Mrs. N. The property devised to her was of greater value than that given to the plaintiffs by about five thousand dollars. The judge charged the jury that he should hold the law regarding the degree of capacity required to make a valid will to be as stated in the head note of the case of *Stewart's executor* v. *Lispenard*, (26 *Wend.* 255,) which he read to the jury as follows: "Imbecility of mind in a testator will not avoid his last will and testament. Idiots, lunatics and persons *non compos mentis* are disabled from disposing of their property by will, but every person not embraced within either of the above classes, of lawful age and not under coverture, is competent to make a will, be his

understanding ever so weak. Courts in passing upon the validity of a will do not measure the extent of the understanding of the testator; if he be not wholly deprived of reason, whether he be wise or unwise he is the lawful disposer of his property, and his will stands as a reason for his actions." The judge further remarked, that he understood the doctrine established by that case to be that mere imbecility of mind, however great, will not avoid the will of a testator. If he be not totally deprived of understanding, his right remains perfect to dispose of his property by will. The plaintiffs' counsel excepted. He also charged on the subject of undue influence, that if the testator had been induced to make the provisions in the last will by the undue influence of the defendant or his wife, the will was void ; but it was for the jury to determine from the evidence whether there was any undue influence exercised over the mind of the testator at the time he executed his will. The jury found a verdict for the defendant. The plaintiffs move for a new trial on a case.

*S. Stevens,* for the plaintiffs. The judge erred in his charge upon the subject of testamentary capacity. The true rule is, that a testator must be of a sound and disposing mind and memory, capable of recollecting, discerning and feeling the relations and obligations of family and blood so as to enable him to make a disposition of his property with sense and judgment. (2 *Hagg. Eccl. R.* 182, 3 ; *Den* v. *Johnson,* 2 *South. R.* 458; *Clark* v. *Fisher,* 1 *Paige,* 171; 1 *Curteis' Eccl. R.* 84.) The case of *Stewart's ex'r* v. *Lispenard* does not profess to establish a rule of law. It turned upon the peculiar facts in that case; and even conceding the case to be correct and the abstract which the judge read to the jury to be a correct exposition of it, still the charge was incorrect, for it would admit the competency of an idiot, who generally has some glimmering of reason, to make a will. The judge erred in not properly instructing the jury as to the legal effect of the testimony on the subject of undue influence.

*M. T. Reynolds,* for the defendant. The rule of evidence where a will is attacked on account of alleged mental incapacity in the testator is different in the ecclesiastical courts and before surrogates from that which prevails in a court of common law, where a party makes title to real estate under a will. In the spiritual courts, mental imbecility is considered in connection with undue influence as a ground for refusing to admit a will to probate. In the case before the court the judge, in the part of the charge complained of, was giving the rule of law as to what constituted *non compos mentis,* and not what evidence was admissible in connection with the allegation of undue influence; and the principle was correctly laid down as established in *Jackson* v. *King,* (4 *Cowen,* 207,) as well as in the case of *Stewart's ex'r* v. *Lispenard.*

If the plaintiffs' counsel had desired other legal instructions to be given upon the point of undue influence, he should have so stated, and have propounded the propositions of law which he desired to have laid down. .

*By the Court,* Jewett, J. The statutory provisions respecting the capacity to make a last will and testament are as follows : " All persons, except idiots, *persons of unsound mind,* married women and infants, may devise their real estate by their last will and testament duly executed." (2 *R. S.* 56 § 1.) "Every male person of the age of eighteen years or upwards, and every female (not being a married woman) of the age of sixteen years or upwards, of *sound mind and memory,* and no others, may give and bequeath his or her personal estate by will in writing." (2 *id.* 60, § 21.)

The remark of the learned circuit judge in his charge to the jury, which was excepted to, in reference to the mental capacity of the testator at the time he signed the will of the 6th of February, 1841, raises this question : whether there is any point between the highest and lowest grade of mental strength, which being attained in a given case, the law deems the individual of *unsound mind.* The judge held that there was not. He stated, in effect, that however weak the mind of the testator was proved

Blanchard v. Nestle.

to have been, unless it was shown that he was totally deprived of understanding, his will could not for that cause be avoided. This sentence in the charge should be read in connection with that which immediately preceded it, which was a rehearsal of part of the marginal abstract of the case of *Stewart's ex'r* v. *Lispenard.* That case, which was determined in the court for the correction of errors, I think fully sustains the charge. It was there held, that the term "*unsound mind*," in our law, was used as synonymous with *non compos mentis*—which comprehended all defects of the mind of which the law takes notice. This, it was said, was of four kinds, as defined by Lord Coke and approved by Blackstone. "1. *Idiota,* which from his nativity by a perpetual infirmity is *non compos mentis*. 2. He that by sickness, grief, or other accident, *wholly loses his memory and understanding.* 3. A lunatic, that hath sometimes his understanding and sometimes not, and therefore he is called *non compos mentis* so long as he hath not understanding. 4. Lastly, he that for a time depriveth himself, by his own vicious act, of his memory and understanding, as he that is drunken." It is not pretended that the testator falls within either of these definitions of *non compos mentis* except the second; but it is insisted that by reason of sickness and the infirmity of old age his memory and understanding were so impaired as to render him incapable of recollecting, discerning and feeling the relations and obligations of family and blood, so as to enable him to make a disposition of his property with sense and judgment. This involves the proposition, that although the testator had not wholly lost his memory and understanding, yet that he was, from *mere weakness* of mind, in contemplation of law of *unsound mind*—and for that reason, within the exception of the statute. It is enough to say that the law makes no such distinction. There is no grade of understanding, between the highest and lowest, which incapacitates the testator, when there is no fraud or imposition. In the language of Senator Verplanck, "to establish any standard of intellect or information beyond the possession of reason in its lowest degree, as in itself essential to legal capacity, would create endless uncertainty, difficulty and

litigation, would shake the security of property, and wrest from the aged and infirm that authority over their earnings or savings which is often their best security against injury and neglect. If you throw aside the old common law test of capacity, then proofs of wild speculations or extravagant and peculiar opinions or of the forgetfulness or the prejudices of old age might be sufficient to shake the fairest conveyance, or impeach the most equitable will. The law, therefore, in fixing the standard of positive legal competency, has taken a low standard of capacity; but it is a clear and definite one, and therefore wise and safe. It holds, (in the language of the latest English writer on this subject,) that " weak minds differ from strong ones only in the extent and power of their faculties; but unless they betray a total loss of understanding, or idiocy, or delusion, they cannot properly be considered *unsound.*" (*Shelford on Lunacy,* 39.)

Lord Hardwicke, (*Ex parte Barnsley,* 3 *Atk.* 168,) says, " Being *non compos*—of *unsound mind*—are certain terms in law, and import a total deprivation of sense. Now weakness does not carry this idea along with it; but courts of law understand what is meant by *non compos* or insane, as they are words of a determinate signification."

It is contended that the judge erred in omitting to instruct the jury as to the legal effect of the testimony on that subject. It is a sufficient answer to this objection that the plaintiffs on the trial acquiesced in the charge ; and no complaint is made against what was said by the judge, but it consists in his not having dilated upon the facts proved, and the presumptions of law arising from them. The counsel for the plaintiffs should have called on the judge for a further charge, if it was not satisfactory. It is no ground for a new trial, that more might have been said with propriety on the subject, by the judge, especially as no request was made. (*Camden, &c. Transportation Co.* v. *Belknap,* 21 *Wend.* 354.)

I have examined the evidence, I think carefully, and am free to say, that in my opinion it falls far short of establishing the fact of any improper influence having been exercised over the testator in the making of his will. There is not the slightest

proof that I can discover, to show any artifice or fraud having been practised or attempted, by any person, upon the testator in regard to it. It is true that the defendant's wife wrote a part of the will; but if there is any reliance on human testimony, it is equally true that in that she only obeyed with reluctance, the commands, or complied with the urgent request of her father. It is said that she dictated the will. If by that is meant that she reminded her father of what he had, as she stated, before told her in relation to certain of his property, it is true. But does that amount to the exercise of undue influence? Influence—persuasion may be fairly used. A person has a right by fair argument or persuasion to induce another to make a will, and even to make it in his own favor. The procuring a will to be made by such means is nothing against its validity. (*Miller* v. *Miller*, 3 *Serg. & Rawle*, 267.)

So far from the verdict being against the weight of evidence, I think it well warranted by the proof.

New trial denied.