LEEPER, Ex'r, &c. *vs.* TAYLOR AND WIFE.

[CONTESTED PROBATE OF WILL.]

1. *Undue influence; what constitutes.*—The undue influence necessary to overthrow a testamentary disposition of one's estate, must be of such a character as to dominate the will of the testator, and substitute the will of another in its stead. There must be such importunity, or coercion, as could not be resisted, so that the motive impelling the testator is tantamount to force or fear.

2. *Unsoundness of mind; what constitutes.*—The unsoundness of mind which incapacitates one to make a valid will, is not mere impairment or weakness of intellect, which sometimes attends old age or disease, but the mind must be so prostrated as to lose the government of reason and common sense.

3. *Reversal of judgment, with instructions for rendition in primary court.* On appeal from a judgment and decree of the probate court, in the matter of the contested probate of a will, the evidence having been submitted to the court without the intervention of a jury, and being all set out in the bill of exceptions, the appellate court, on reversing the judgment of the primary court, (Revised Code, § 2251,) will direct that court what judgment to render in the case.

APPEAL from the Probate Court of Talladega.
Heard before the Hon. GEO. P. PLOWMAN.

IN the matter of the probate of the last will and testament of Dr. Edward Gantt, deceased, which was propounded for probate by Samuel Leeper, one of the executors therein named, and contested by Mrs. Louisa Taylor and her husband, LaFayette Taylor. The case was submitted to the court, by consent, without the intervention of a jury; and its judgment and decree, refusing to admit the will to probate, is now assigned as error. The evidence is too voluminous to be stated at length, and it can not be conveniently condensed. The material facts, so far as they are necessary to a correct understanding of the legal points decided, appear in the opinion of the court.

JOHN T. HEFLIN, for appellant.
BRADFORD & MARTIN, *contra.*

PETERS, J.—The will in this case is contested on two grounds. I mention these, but not in the order of the pleading: 1st, undue influence; 2d, unsoundness of mind.

Upon the first ground of contest, but little need be said. The undue influence necessary to overturn a testamentary disposition of one's estate must be of such a character as to overpower the will of the testator, and substitute another will in its stead. It is said by the text-writers on this branch of legal learning, "That the influence to vitiate the act must amount to force and coercion, destroying the free-agency." It must not be the influence of affection, or attachment, or the desire to gratify the wishes of another. And there must be evidence of such importunity, or coercion, as could not be resisted, so that the motive impelling the testator was tantamount to force or fear.—1 Williams Ex'rs, 42; 1 Jar. on Wills, 39; *Taylor v. Kelly*, 31 Ala. 59, 70; *Gilbert v. Gilbert*, 22 Ala. 529; *Dunlap v. Robinson*, 28 Ala. 100; *Leverett's Heirs v. Carlisle*, 19 Ala. 80; *Pool v. Pool*, 35 Ala. 12; *Hall's Heirs v. Hall's Executor*, 38 Ala. 131; 1 Redf. Law of Wills, 514 *et seq.* There is no proof whatever of the exercise of such an influence, in this case.

The second ground of objection above stated to the instrument propounded as the will of Dr. Gantt, is much more difficult of treatment. In this case it is more a question of fact than of law. To make a will implies the possession of mind sufficient for that purpose. The will itself should be the expression of the testator's own mind. It is the testator's wish and directions as to what disposition shall be made of his estate after he shall have departed from this life. The testamentary disposition takes effect at the testator's death. And it is doubtless for this reason that the preparation of a will is so often postponed until the expectation of death has arrived, as an earlier disposition might not suit the exigencies of that hour. Though a will may be made at any time in life by a person of sound mind and of sufficient age.—10 Bac. (Bouv. ed.) 479; Rev. Code, §§ 1910, 1916. After twenty-one, there is no limit as to age; but the soundness of mind of the testator must be such that he can be said to be of sound and disposing

mind at the time the will is made and published. The words " of sound mind " are those used in our statute. They are not terms new to the law, but have been long used and defined by judicial tribunals and eminent authors upon the subject of insanity. It is said, after repeated discussions of the same question by our own courts, *That the testator should make a valid will, it is not necessary that his memory should be perfect, and his mind wholly unimpaired. If he had memory and mind enough to recollect the property he was about to bequeath, and the persons to whom he wished to will it, and the manner in which he wished it disposed of, and to know and understand the business he was engaged in, he had, in contemplation of law, a sound mind; and his great age, bodily infirmity, and impaired mind, would not vitiate a will made by one possessing such capacity.* The authorities upon which this declaration of the law is made fully sustain it.—*Taylor v. Kelly*, 31 Ala. 72; *Harrison v. Rowan*, 3 Wash. C. C. 385; *Coleman v. Robertson*, 17 Ala. R. 84; 1 Jar. on Wills, 50; *Elliott's Will*, 2 J. J. Marshall, 340 ; *Dornick v. Reichenback*, 10 S. and R. 84; *Blanchard v. Nestle*, 3 Denio, 37.

It would be monstrous to permit a testator's age and infirmity of body to defeat his purpose in this disposition of his estate, when he evidently knew and intended what his will expressed at the time it was made and published. *Maverick v. Reynolds*, 2 Bradf. Sur. 360. This would make old age synonymous with imbecility. Though old age often has its weakness, physical and mental, it is not necessarily associated with such unsoundness of mind as renders its possessor incapable of making a valid will.—Ray's Med. Jur. § 336. In referring to this subject, in one of his opinions, Chancellor Kent has said : " It is one of the painful consequences of extreme old age, that it ceases to excite interest, and is apt to be left solitary and neglected. The control which the law still gives to a man over the disposal of his property is one of the most efficient means which he has in protracted life, to command the attention due to his infirmities. The will of such an aged man ought to be regarded with great tenderness, when it appears not to have

been procured by fraudulent arts, but contains those very dispositions, which the circumstances of his situation and the course of the natural affections dictated."—*Van Alst v. Hunter*, 5 John Ch. 148.

The testimony here very clearly shows that Dr. Gantt very well knew what he was about when he made and published the instrument propounded for probate as his will; that he was the sole author of it, and that it proceeded from his own and from no other mind. Such facts are entitled to overpower the mere conjectures of the witnesses who testified, that they *believed* his mind to have been unsound.—*Couch v. Couch*, 7 Ala. 519. The trivial circumstances to which the witnesses, who testify of unsoundness of mind, allude, as a basis of their opinions, show that they mistook *impairment* of mind and *weakness* of mind for the *statutory unsoundness*, which is required to invalidate a will. One witness was prevented by the court from stating the facts on which he rested his belief of unsoundness of mind. Another illustrated his belief by referring to a table, on which there was a defective spot, as "large as a dime." Another, that the testator had told a young lady, that she was in " good condition," and others much of the same sort. Yet the attesting witnesses all say, that the will was made and published at the testator's own suggestion, and was wholly dictated by him, and carefully executed with all the technicalities required by the statute; that he was then able to sit up on his bed, to converse and act rationally, and becomingly to discharge the courtesies of his house and table to his guests and friends. He knew his neighbors; he talked and acted rationally, and always understood common ideas, when plainly expressed. And one of the attesting witnesses, who says he suspected his soundness of mind, but not on the day of the publication of the will, declares that "his conversation was at all times sane and rational, and he never knew him to do an irrational act."

Outside of the evidence of the attesting witnesses, there is a great mass of conflicting testimony, which can not be reconciled, except upon the hypothesis that it is mere opin-

ion, and refers to a weakened and enfeebled intellect, rather than to a mind so prostrated as to lose the government of reason and common sense. This appears when the witnesses declare that "he was not what he had been." This may be said of all old men oppressed with disease; but it is not evidence of that insanity which denies them the right to dispose of their estates by will. It has already been said that mere feebleness of mind is not enough to deprive the testator of the right to make a will, unless it is so great as to amount to a prostration of the reason.—3 Denio, 37, *supra.* Here, the will is just and equal, and displays reason, memory, and benevolence; and it was made without advice or dictation from any one. Such a will is itself evidence of a disposing mind.—*McDaniel's Will,* 2 J. J. Marshall, 331.

The will is set out at length in the record. It shows that, after a liberal devise to her daughter, Mrs. Taylor, the testator's adopted child, is placed on an equal footing with his necessitous sisters. And his sister, Elmira, after rewarding her as his nurse in his old age and his many infirmities, is also made an equal participant in his general bounty. His old and tried friend and former slave, *John,* is generously provided for, in conformity with his previous declarations. The gift to the wife and family of his relation, *Dr. William H. Gantt* of Texas, in their peculiar and unfortunate condition at the end of the late war and the death of the head and support of the family, was eminently kind and benevolent. So was the gift for the lyceum. In every sense, the testament shows such a disposition of the testator's estate, as conforms to the intelligence, character, and tastes of Dr. Gantt, who made it, as given by the numerous witnesses, who had best and longest known him. I can not, therefore, free my mind from the apprehension, that the learned judge in the court below mistook the force of the evidence, which tended to establish *impairment* and *feebleness* of mind, as going to show a higher order of derangement, that is, statutory unsoundness and insanity. In this he fell into error.—1 Redf. on Law of Wills, ch. III. § 15.

The instrument propounded as the last will and testament of "Dr. Edward Gautt" for probate in the court of probate in the said county of Talladega in this State was properly made and published, and the testator was of sufficiently sound mind and disposing memory at the time the same was so made and published as to enable him to make a valid will. It should be admitted to probate according to law.—Rev. Code, § 1965.

The judgment of the court below is reversed, and the cause is remanded. And it appearing to this court from the bill of exceptions, that all the evidence, in relation to the matter in controversy in this suit, offered in the court below, is set out in the bill of exceptions aforesaid, this court doth order and direct, that the court below shall render judgment that the said instrument propounded by said Samuel Leeper in the court below as the last will and testament of Dr. Edward Gantt, deceased, bearing date the thirteenth day of November, 1867, and attested by Hugh S. Darby, G. G. Morris, and J. L. Darby, as subscribing witnesses thereto, be admitted to probate, and declared to be duly proven, and ordered to be recorded, as and for the last will and testament of Dr. Edward Gantt, deceased, in manner and form required by law, and that said Louisa Taylor, and said LaFayette Taylor, said contestants, be taxed with the costs of said contest.—Rev. Code, §§ 2251, 2260, 2214, 1967.

And the appellants, said Louisa Taylor and said LaFayette Taylor, will pay the costs of this appeal in this court, and in the court below.