THOMAS F. MULLOY, APPELLEE, v. OSCAR P. INGALLS AND CATHERINE L. INGALLS, APPELLANTS.

1. **Deeds**: EXECUTION.  In the absence of fraud, mere imbecility or weakness of mind in a grantor, however great, will not avoid his deed, unless there be evidence to show a *total* want of reason or understanding.

2. ———: WITNESSES.  The presence of the attesting witness to a deed or mortgage, at the time it is subscribed by the parties thereto, is not essential, if he is immediately afterwards told by them that such instrument is their agreement, and is by them requested to subscribe the same as a witness.

APPEAL from the district court of Douglas county.

The district court having rendered a decree foreclosing a mortgage executed by the defendants, Catherine L. Ingalls brought the cause here to reverse that decree. The facts fully appear in the opinion of the court.

*E. Estabrook*, for the appellant, contended that Catherine L. Ingalls, at the time of the execution of the mortgage in question, was not of sufficient capacity to convey or to execute the same. Such want of capacity is sufficient ground for avoiding the contract. *Lincoln v. Buckmaster*, 32 *Vermont*, 653. *Jackson v. King*, 4 *Cow.*, 207. *Matter of Barker*, 2 *Johns. Chan.*, 232. *Gates v. Meredith*, 7 *Ind.*, 440. *Hale v. Hills*, 8 *Conn.*, 39.

*Seamer v. Phelps*, 11 *Pick.*, 304. *Ridgeway v. Darwin*, 8 *Vesey*, 65. *Ex parte Cramer*, 12 *Vesey*, 445. *Hovey v. Hobson*, 55 *Maine*, 256. *Coleman v. Frazer*, 3 *Bush*, (*Ky*), 300.

The mortgage was not subscribed in the presence of the witness. *General Statutes*, 872. 3 *Washburn on Real Property*, 248, *Sec.* 11; 426, *Sec.* 546. *Hollenback v. Fleming*, 6 *Hill*, 306. *Henry v. Bishop*, '2 *Wend.*, 575.

*Savage & Manderson*, for Mulloy, the appellee.

I. No fraud, imposition, surprise, or inadequacy of consideration having been alleged, the appellate court before reversing the decree of the court below, must be satisfied that Mrs. Ingalls was, at the time of the execution of the mortgage, *non compos mentis*. No weakness of mind, no low degree of intellect, no petulance or childishness from illness, no reduction of the extent or power of her faculties from a normal condition, will be sufficient, unless they amount to the total loss of understanding, which the law recognizes as insanity. *Stewart v. Lispenard*, 26 *Wend.*, 255. *Blanchard v. Nestle*, 3 *Denio*, 37. *Staples v. Wellington*, 58 *Maine*, 453. *Lozear v. Shields*, 23 *New Jersey Equity*, 509.

II. The witness to a deed need not be present at the moment of execution, if called on immediately afterwards, and requested to attest. *Munns v. Dupont*, 3 *Wash.*, *C. C. R.*, 31, 42. *Hollenback v. Fleming*, 6 *Hill*, 303. *Parker v. Mears*, 3 *Esp.*, *R.*, 171. 3 *Washburn on Real Prop.*, 3 *Ed.*, 248.

GANTT, J.

The plaintiff instituted suit in equity against the defendants to foreclose a mortgage, and his petition is

in the usual form in such cases.   There was a default as
to the defendant O. P. Ingalls; and the defendant Cather-
ine L. Ingalls makes defense to the suit on the ground,
as alleged in her answer, that at the time she signed the
mortgage, ",she was so prostrated both in her mind and
body by sickness that she was thereby deprived of her
reason, and could not and did not agree in mind to the
execution of said mortgage;" or in other words, as it is
contended, that by reason of weakness of mind caused
by sickness, the defendant had not sufficient capacity to
convey or to execute the instrument.   The question then,
presented by the record before us, is, was this defendant,
at the time she signed and acknowledged the mortgage,
*non compos?*

Lord Coke defines *non compos mentis* " to be a per-
son who was of good and sound memory, and by the
visitation of God had lost it," or "he that by sickness,
grief, or other accident, wholly loseth his understanding."
*Beverly's Case*, 4 *Coke*, 123.   *Coke Litt.*, 247a.   And
Lord Hardwicke says that " being *non compos*—of
unsound mind—are certain terms in law, and import a
total deprivation of sense.   Now weakness does not
carry this idea along with it; but courts of law under-
stand what is meant by *non compos*, or insane, as they
are words of a determinate signification."   *Ex parte
Bamsley*, 3 *Atk.*, 168.   And where statutory provisions
do not change this doctrine, the current of authority
seems to be uniform in sustaining the rule as above
stated; and therefore in legal parlance, these terms
mean in respect to the condition of the mind of a per-
son, a total want of understanding.

Deeds of all such persons are void; but mere imbe-
cility or weakness of mind, however great, will not avoid
a deed or contract unless there be evidence to show a
total want of reason or understanding, because, as is
said in *Blanchard v. Nestle*, reported in 3 Denio, 37,

"our law does not distinguish between different degrees of intelligence. It does not deny to a man of very feeble mind the right to make contracts and manage his own affairs. In the absence of fraud, mere imbecility in the grantor, however great it may be, will not avoid his deed." Hence, there is no grade of understanding between the highest and the lowest, which incapacitates a man from making a contract where there is no fraud, imposition or undue influence practised upon him. And I may repeat, as is so well said by Verplanck, Senator, in *Stewarts Ex'rs v. Lispenard*, 26 *Wend.*, 303, "to establish any standard of intellect or information, beyond the possession of reason in its lowest degree, as in itself essential to legal capacity, would create endless uncertainty, difficulty, and litigation, would shake the security of property, and wrest from the aged and infirm that authority over their earnings or savings which is often their best security against injury and neglect. If you throw aside the old common law test of capacity, then proofs of wild speculation, or extravagant and peculiar opinions, or of forgetfulness or prejudices of old age, might be sufficient to shake the fairest conveyance, or impeach the most equitable will. The law therefore, in fixing the standard of positive legal competency, has taken a low standard of capacity; but it is a clear and definite one, therefore wise and safe. It holds, in the language of a late English Commentator, that weak minds differ from strong ones only in the extent and power of these faculties; but unless they betray a total loss of understanding, or idiocy or delusion, they cannot properly be considered unsound." *Shelford on Lunacy*, 39.

But it is said that under the rulings of the court, in the cases of *Ridgeway v. Darwin*, 8 *Vesey*, 66, and *Ex parte Cranmer*, 12 *Vesey*, 445, a different doctrine was laid down which now prevails. It seems that in these

cases the court assumed jurisdiction to issue a commission to inquire into the fitness of a person to govern himself and manage his affairs, who was under that imbecility of mind which is not strictly insanity, but rendered him liable to be robbed; and in the latter case the Lord Chancellor said he thought "there ought to be an act of parliament, not from any defect in jurisdiction, but on the immense moment, that the Lord Chancellor should not assume an authority that does not belong to him by the ancient jurisdiction, and that may press sorely on the liberty of the subject." But on the strength of a former case the chancellor said: "I will protect this gentleman, by granting a *melius inquirendo*, to see whether he is fit for the government of himself, and the management of his affairs." And although this doctrine seems now to prevail, yet it does not impair the rule as above stated, for deeds or contracts in these exceptional cases, as is said in *Stewart's Ex'r v. Lispenard*, "have been held void, not because the person making them was incapable of a valid consent to any act or contract, but because the whole transaction taken together, with all its facts, of which the proof of mental weakness was one, showed that the consent, the very essence of the contract, was wanting to that particular act, and because of the relative character of the will or contract itself, and of all the external circumstances in proof to the mental capacity of the party." So, in such cases, the sound and disposing mind, of whatever degree of intelligence it may be in other respects, was wholly deprived of understanding in regard to the special matter; or the whole transaction was the result of fraud, abuse of confidence or delusion. In *Jackson v. King*, 4 *Cow.*, 217, it is said that the question of the validity of a deed, executed prior to a commission of this nature, would not be in the least affected by such commission. It must be shown that the grantor was *non compos*

within the legal acceptation of the term; that it was not a partial, but an entire loss of the understanding; for the common law seems not to have drawn any discriminating line by which to determine how great must be the imbecility of mind to render a contract void, or how much intellect must remain to uphold it." *Blanchard v. Nestle*, 3 *Denio*, 41.

We think that under the above rules of law, the evidence taken in the case at bar falls far short of showing a total want of understanding in the defendant at the time she executed the mortgage. B. Reed, the notary public, who is the subscribing witness, and who took the acknowledgment of the parties to the instrument, testifies that he conversed with her at the time; asked her about her health; that he put to her the usual formal questions in taking her acknowledgment, and that she answered in a natural manner, and just as she would when well. This evidence is not at all impaired by that of the daughter of the defendant, who thought her mother was at the time "childish," which means simplicity, or weakness of mind. The term "childish" certainly expresses a degree of reason or intelligence, and while this witness may have believed it was of a very low degree, others might have greatly differed from her opinion and placed it much higher; hence we see the necessity and the correctness of the rule, that there is no grade of understanding between the highest and lowest which incapacitates a person from making a contract, when no fraud is proven. In this case, neither fraud, delusion, nor undue influence was set up as ground of defense, or attempted to be proved. Indeed, there is not the slightest proof tending to show that any artifice, improper influence or fraud was practiced on this defendant to induce her at the time to execute the instrument.

Again it is said, and urged as ground of defense, that the

mortgage was not signed by the parties in the presence of the subscribing witness, and that therefore he is not a good attesting witness. This witness testifies substantially that he was called to the house of the parties to subscribe the mortgage as witness thereto, and to take their acknowledgment, and that when he went into the room the defendant had a pen and the mortgage in her hand; that he could not say positively he was present when she signed it, but thinks she was signing it when he went in, and that she handed to him the pen, and he was requested to witness her signature and he did so. Under these facts we have no doubt that he was a competent witness to prove the execution of the instrument by the parties. And it is not material whether it was signed by the parties in his presence or not, if he was immediately afterwards called on by them to subscribe his name as a witness to it. He was the person agreed upon by the parties to be the only witness to prove it. And the rule seems to be now well settled that it is not essential that such witness should be present at the time the parties subscribe their names to the instrument, for, if afterwards he is told by the parties that the instrument is their deed or agreement, and is by them requested to subscribe the same as a witness to it, that, in law will be sufficient, and in such case, the execution of the instrument and the subscribing by the witness will be considered as parts of the same transaction. The decree of the court below should be affirmed.

DECREE AFFIRMED.

MAXWELL, J., concurred. LAKE, Ch. J., did not sit.