MILES B. RIGGS, as Administrator, etc., of IRA RIGGS, Deceased, Respondent, *v.* THE AMERICAN TRACT SOCIETY, Appellant.

*Allegation of want of capacity to contract, because of unsoundness of mind — when sufficient — necessary parties to an action to recover money paid.*

The complaint herein alleged that plaintiff's intestate was, for upwards of fifteen years next preceding his death of unsound mind, and for that cause legally incapable of making the dispositions of his property thereinafter set forth ; that shortly before his death he transferred to the defendant several sums of money, amounting to $4,000, upon the agreement that the defendant should pay interest thereon, every six or three months, to the intestate during his life, and thereafter interest on the whole or a part of the said moneys, to either his executor or administrator, for the benefit of his wife, or directly to his wife, and to his sister, during their respective lives ; that interest was paid to the intestate during his life ; that the sister died shortly after the intestate, without having received any interest, and that none had been paid to the plaintiff, the administrator ; that the plaintiff had, with the written consent of the widow, before the commencement of this action, tendered to the defendant a release of all liability under said agreement, together with the said written consent of the widow, and demanded a return of the money which had been refused. The plaintiff sought to recover the $4,000, with interest from the time of demand. Upon a demurrer to the complaint, *held,* that the allegation as to the incapacity of the intestate to enter into the contract was one of fact and not of law, and was sufficient.

That as the interest was payable either to the plaintiff, or to the widow, and as her offer to release the defendant had been rejected, she was a necessary party to the action.

As to when a court of equity will set aside a contract made by one not wholly *non compos mentis*, though no committee has been appointed, and though no inquisition has interdicted an interference with his property, considered.

APPEAL from an order of the Wayne Special Term overruling a demurrer to the complaint, and from the judgment entered upon said order. The demurrer was interposed on the grounds : 1st. That there was a defect of parties defendant, in the omission of the widow 'of the intestate, and also in the omission of the personal representatives or next of kin of his sister, deceased, and, 2d. That, the complaint did not state facts sufficient to constitute a cause of action.

*Austin Abbott* and *Howard Payson Wilds*, and *Edward H. Avery*, of counsel for the appellant. The widow is a necessary party. (*Nevius* v. *Dunlap*, 33 N. Y., 676; *Penman* v. *Slocum*, 41 id., 53; *Gen. Mut. Ins. Co.* v. *Benson*, 5 Duer, 168; *Cucullu* v. *Walker*, 16 La Ann., 198; *Dusenbury* v. *Artis*, 1 Duv. [Ky.], 30.) The action is one for money had and received, and the plaintiff fails to satisfy the well-settled rule that he must show an equitable right in good conscience and natural justice. (*Buel* v. *Boughton*, 2 Den., 91; 1 Chitt. Pl., 368; *Peters* v. *Gooch*, 4 Blackf. [Ind.], 515.) The transaction being not void, but voidable only, was binding on the defendants. (*Allen* v. *Berryhill*, 27 Iowa, 534; *S. C.*, 1 Am. R., 309; *Allis* v. *Billings*, 6 Metc., 415; *Carrier* v. *Sears*, 4 Allen, 336; *Howe* v. *Howe*, 99 Mass., 98.) From the title of the defendants, " *The American Tract Society*," the court may take notice of its being a charity. (*Blanchard's Gunstock Factory* v. *Warner*, 1 Blatchf., 258, 271, 277; *Dorsey Harvester Rake Co.* v. *Marsh*, 6 Fish. Pat. Cas., 393; *Ould* v. *Washington Hospital*, 95 U. S., 303; 2 Perry on Trusts, §§ 701, 705.) To avoid a transaction *inter vivos*, on the ground of insanity, the party impeaching it must show either idiocy or lunacy, or an *inquisition* interdicting the transaction on the ground that the person had been judicially found of unsound mind within the meaning of the statutes of lunacy. (*Jackson* v. *King*, 4 Cow., 207; *Person* v.

*Warren*, 14 Barb., 494; *Osterhout* v. *Shoemaker*, 3 Den., 37 *n*.) Apart from the question of incapacity, and in the absence of undue influence or fraud, there can be no question of the validity of such a contract. (*Stanton* v. *Miller*, 1 Sup. Ct. [T. & C.], 23; 58 N. Y., 192; *Re Cornwall*, 9 Blatchf., 114; *Spalding* v. *Hallenbeck*, 30 Barb., 292; 35 N. Y., 204; 39 Barb., 79.) The complaint is fatally defective. A person who is merely "of unsound mind" is not necessarily, nor even presumptively, incapable of making such a disposition of his property. In the present state of the law of insanity, "unsoundness of mind" is the most indefinite term known to the law for indicating mental deficiencies. (Browne's Medical Jurisprudence of Insanity, § 57; *Blanchard* v. *Nestle*, 3 Den., 41; *Searle* v. *Galbraith*, 73 Ill., 272; *Kendall* v. *May*, 10 Allen [Mass.], 59, 64; *Hall* v. *Unger*, 2 Abb. [U. S.] Circ. Ct. R., 512; *Dennett* v. *Dennett*, 44 N. H., 531; *Oakes Case*, 8 Law Rep., 122 [SHAW, Ch. J.]; *Hinchman* v. *Richie*, Brightly, 143; Article on Confinement of Insane, 3 Am. Law Rev., 193, January, 1869; *Brushe's Case*, 3 Abb. [N. C.], 325; *Ayers' Case*, id., 218; *Spittle* v. *Walton*, L. R., 11 Eq., 420; *Kendall* v. *May*, 10 Allen [Mass.], 59; *Cartwright* v. *Cartwright*, 1 Phill., 90; *Matter of Barker*, 2 Johns. Ch., 237; *Breed* v. *Pratt*, 18 Pick., 115, and cases cited; *Lewis* v. *Jones*, 50 Barb., 645, and cases cited; *Matter of Gilbert*, 3 Abb. [N. C.], 222; *Delafield* v. *Parish*, 25 N. Y., 9, 27, 29 [overruling *Stewart* v. *Lispenard*, 26 Wend., 225]; *Van Guysling* v. *Van Kuren*, 35 N. Y., 70; *Banks* v. *Goodfellow*, L. R., 5 [Q. B.], 549; *Person* v. *Warren*, 14 Barb., 495, middle of page; *Anon. Z.* v. *X.*, 2 Kay & J., 441, and cases cited; Story on Partn., §§ 292–297; *People* v. *Montgomery*, 13 Abb. Pr. [N. S.], 207, and cases cited; *People* v. *Flanagan*, 52 N. Y., 467; *People ex rel. Norton* v. *N. Y. Hospital*, 3 Abb. [N. C.] 229, *n*.]; *Holcomb* v. *Holcomb*, 28 Conn., 177; *Regina* v. *Hill*, 5 Eng. L. & Eq., 547; *S. C.*, 5; Cox. Cr. Cas., 2592; Den. C. C., 254.) The averment "of unsound mind" is not helped by the legal conclusion added by the pleader, "*and for that cause legally* incapable of making the dispositions of his property to the defendant, which are hereinafter set forth." This is a mere legal conclusion, and does not avail. (*People ex rel. Purdy* v. *Highway Com-*

*missioners*, 54 N. Y., 276; *City of Buffalo* v. *Holloway*, 7 id., 493; *Butler* v. *Viele*, 44 Barb., 166 ; *Simmons* v. *Fairchild*, 42 id., 404; *Commercial Bank of Rochester* v. *City of Rochester*, 41 id., 341; *Hofheimer* v. *Campbell*, 59 N. Y., 274; *Deshon* v. *Merchants' Bank*, 8 Bosw., 461.)   It is well settled, in this country as in England, that the contracts of an insane person (in the absence of fraud, etc.) are not void, but at most only voidable. (*Ingraham* v. *Baldwin*, 9 N. Y., 45; 12 Barb., 9; *Loomis* v. *Spencer*, 2 Paige, 158; *Matter of Beckwith*, 3 Hun, 443 ; *Fitzhugh* v. *Wilcox*, 12 Barb., 237; *Person* v. *Warren*, 14 id., 488; *Canfield* v. *Fairbanks*, 63 id., 461; *Beavan* v. *McDonnell*, 9 Exch., 309; *Beals* v. *See*, 10 Barr., 60; *Allis* v. *Billings*, 6 Metc., 415; *Carrier* v. *Sears*, 4 Allen, 336; *Howe* v. *Howe*, 99 Mass., 98; *Allen* v. *Berryhill*, 27 Iowa, 534; *S. C.*, 1 Am. Rep., 309; *Hunt* v. *Weir*, 4 Dana, 348; *Eaton* v. *Eaton*, 8 Vroom [N. J.], 108; *S. C.*, 18 Am. R.; *Carr* v. *Holiday*, 5 Ired. Eq., 167; 1 Story on Contracts, § 82 [5th ed.]; § 42 [4th ed.]; Addison on Contracts, 140 [Banks' ed.]; § 192, vol. 1, 192 [Morgan's ed.]).   And equity will not interfere to avoid an executed contract, where it was made in good faith, without knowledge of the incapacity, and the lunatic has had the benefit of it. (*Loomis* v. *Spencer*, 2 Paige, 158; *Price* v. *Berrington*, 7 Eng. L. & Eq., 254; *S. C.*, 15 Jur., 999; 3 Mac. & G., 486; *Sprague* v. *Duel*, Clarke Ch., 90; 11 Paige, 480; *Neil* v. *Morley*, 9 Ves., 478, followed in *Loomis* v. *Spencer*, 2 Paige, 153; *Person* v. *Warren*, 14 Barb., 488.)   Contracts with an insane person, wholly executed, or so far executed that the parties cannot be placed in *statu quo*, cannot be avoided either at law or in equity upon the mere ground of insanity. (1 Story's Eq. Jur., § 227; *Cruise* v. *Christopher*, 5 Dana, 182 *n.*; *Molton* v. *Camroux*, 2 Exch., 487; 4 Exch., 17; *S. C.*, 18 Law Journ.; Exch., 356 [1848]; *Elliot* v. *Ince*, 7 De G. M. & G., 475–487; *State Bank* v. *McCoy*, 19 Smith [Penn.], 204; *Nace* v. *Boyer*, 6 Casey, 99; *Dicken* v. *Johnson*, 7 Geo., 491; *Beals* v. *See*, 10 Barr, 56; *Lancaster County National Bank* v. *Moore*, 78 Penn., 412; *Matter of Beckwith*, 3 Hun, 445; *Hicks* v. *Marshall*, 8 id., 327; *Young* v. *Stevens*, 48 N. H., 133; *Musselman* v. *Cravens*, 47 Ind., 1.)   It is incumbent on the party who seeks to avoid a transaction by an insane person to allege and

prove that the other party had knowledge of the insanity. (*Young* v. *Stevens*, 48 N. H., 133; *Harrison* v. *Richardson*, 1 Moody & Rob., 504; *Ingraham* v. *Baldwin*, 9 N. Y., 45; affirming 12 Barb., 9.)

*Comstock & Bennett*, for the respondent. The gifts, or transfers of money, made by the plaintiff's intestate to the defendant, as stated in the complaint, were *void*, and not merely *voidable*. (*Van Dusen* v. *Sweet*, 51 N. Y., 378; *Farley* v. *Parker*, 6 Oregon, 105; *S. C.*, 25 Am. R., 504; *Dexter* v. *Hall*, 15 Wall., 9; *Thompson* v. *Leach*, 3 Salk., 300; *Estate of Sarah DeSilver*, 5 Rawl., 111; *Yates* v. *Bowen*, 1 Dow & Clark, 380; 1 Sugden on Powers, 179; *Fitzhugh* v. *Wilcox*, 12 Barb., 235; *Pearl* v. *McDowell*, 3 J. J. Marsh, 658; *White* v. *Maxwell*, 5 Pick., 217.) If the several transfers were voidable, and not void, still the plaintiff, as administrator, has a right to recover; for he has a right to avoid the said several transfers, and to recover back the money for the benefit of the next of kin and creditors of the intestate. (*Gibson* v. *Soper*, 6 Gray, 279; *Nichols* v. *Thomas*, 53 Ind., 42; *Hovey* v. *Hobson*, 53 Maine, 451; *Seaver* v. *Phelps*, 11 Pick., 304; *Rice* v. *Peet*, 15 Johns. R., 503; *Henry* v. *Fine*, 23 Ark., 417; *Van Dusen* v. *Sweet*, 51 N. Y., 384.) The allegations in the complaint are sufficient to show that the intestate was insane at the time of the alleged transfers of the several sums of money mentioned in the complaint by him to the defendant, and that his insanity was of such a character as to render him legally incapable of making those transfers. *Ex parte Bransley*, 3 Atk., 167; 1 R. S., 719, § 10; 2 id., 541, § 1; 2 id., 55, 57, § 1; 2 id., 60, § 21; *Stewart's Executor* v. *Lispenard*, 26 Wend., 297; *Blanchard* v. *Nestle*, 3 Denio, 41.)

SMITH, J. :

The complaint alleges that the plaintiff's intestate, Ira Riggs, was, for upwards of fifteen years next preceding his death, of unsound mind, and for that cause legally incapable of making the dispositions of his property to the defendant which are thereinafter set forth; that shortly prior to his death he, in form, transferred to the defendant several sums of money, amounting in all

to the sum of $4,000, which the defendant received and invested. or used in and about its business and for its benefit; that said moneys were so transferred and received under an arrangement. by which the intestate, being of unsound mind, as aforesaid, agreed to give and did give said moneys to defendant, and defendant agreed to give and did give to the intestate certain assurances. in writing obligating the defendant to pay the interest on said money, every six or every three months, to the intestate during his life, and thereafter, on the whole or a part of said money, to either the executor or administrator of the intestate, for the benefit of his wife, being his widow, or directly to his wife and to his sister, Marilda, for their benefit during their lives respectively. The complaint also alleges that the interest on said money was paid by the defendant to the intestate during his life; that his sister, Marilda, died shortly after the intestate's death, without having received any of such interest; and that none of said interest has been paid to the plaintiff. The complaint further alleges that soon after the plaintiff was appointed administrator he found said written assurances among the papers of the intestate, and thereupon he obtained from the surviving wife of the intestate her written consent that the plaintiff might surrender said assurances to the defendant, and he afterwards, and before the commencement of this action, offered to surrender to the defendant the said consent of the widow, acknowledged by her, together with the said assurances and all claims of the plaintiff or of the widow based upon them, and demanded a return of said sums of money; all of which the defendant refused. The relief demanded is a judgment for said $4,000, with interest from the time of said demand.

The demurrer is upon the grounds: 1. That there is a defect. of parties defendant, in the omission of the widow of the intestate, and also in the omission of the personal representatives or next of kin of his said sister, deceased; and 2. That the complaint does not state facts sufficient to constitute a cause of action.

Obviously, the cause of action intended to be stated by the pleader is for money had and received by the defendant from the intestate under circumstances detailed in the complaint.

which, it is claimed, equitably entitle the plaintiff, as the legal representative of the intestate, to recover it back. The basis of the claim is the alleged mental unsoundness of the intestate. It is strenuously contended by the counsel of the appellant, that the complaint is fatally defective in not alleging the character of the unsoundness and the connection between the alleged unsoundness and the transaction sought to be avoided. The argument addressed to us is, that in the present state of the law of insanity, the term " of unsound mind," is no longer a synonym for *non compos mentis ;* that it fails to define any particular kind or degree of mental deficiency, and that it does not, necessarily or presumptively, indicate a want of capacity to enter into such a transaction as is set out in the complaint. A concession of the argument does not lead necessarily to the conclusion that the complaint is defective. The averment is, in substance, that the alleged unsoundness of mind of the intestate was of such a character as to render him incapable of making the alleged transfer of money to the defendant. This statement of the quality of the alleged mental unsoundness, and of its bearing upon the transaction sought to be avoided, is explicit and concise, and no fault can be found with it as matter of pleading, unless it is to be regarded as the mere statement of a conclusion of law. It is true, as a general rule, that mere legal conclusions are not to be pleaded. But it is often difficult to discriminate between what are *facts*, which are required to be pleaded, and what are *legal* conclusions which cannot be pleaded, or rather to state the pure facts without any admixture of elements of law. Indeed, as was said by Mr. Justice SELDEN in *Dows* v. *Hotchkiss* (10 Leg. Obs., 281). " No declaration or complaint was ever so drawn. If a plaintiff states his title to, or ownership of, property in the usual form, is this the statement of a pure fact ? Clearly not. It comes much nearer being the statement of a mere matter of law — that is of a legal right depending on facts not stated. Again, the common averment that the defendant executed or entered into a contract is liable to the same criticism ; or even that he signed, sealed and delivered it. The delivery may have been actual, or it may have been constructive, merely. What amounts to a delivery is a question of law. It is

obvious, therefore, that some latitude of interpretation is to be given to the term *facts*, when used in a rule of pleading. It must, of necessity, embrace a class of mixed facts into which more or less of legal inference is admitted. A contrary construction would tend to intolerable prolixity." These remarks of the learned judge seem applicable to the present case. If the plaintiff's intestate was in fact, so far unsound in mind, as to be incapable of making the transfer set forth, although not wholly devoid of understanding, it is difficult to see how the fact could have been stated differently, except by detailing all the circumstances relied upon to prove the alleged partial insanity. But that mode of pleading would be unendurable by reason of its prolixity, and it would violate another cardinal rule, to wit: that the issuable facts, and not the evidence of them, must be pleaded.

But the counsel for the appellant contends that to establish the invalidity of a deed or other contract, *inter vivos*, made by a person for whom a committee has not been appointed, an entire loss of understanding must be shown, or an inquisition interdicting all interference with property. Such was formerly the rule at law. (*Jackson* v. *King*, 4 Cow., 207; *Blanchard* v. *Nestle*, 3 Den., 37, and authorities cited in note *a.*) But courts of equity have long recognized the principle that the contract of a person not having sufficient mental capacity to enter into such contract, although not wholly *non compos*, may be avoided under certain circumstances, provided it can be done without injustice to the opposite contracting party. But when the party contracting with the lunatic acted in good faith, without knowledge of, or reason to suspect, his mental incapacity, and the party cannot be put in *statu quo*, a court of equity will not interfere to set aside the contract. Under our present system, in which the rules of law and of equity are administered in the same forum, a complaint presenting a case for either legal or equitable relief is not subject to the objection that it does not state facts sufficient to constitute a cause of action. It is true the complaint in this case does not impute to the defendant bad faith, or a knowledge of the mental unsoundness of the intestate, but for aught that appears, the defendant may be put in *statu quo*, if the agreement is avoided. In other words, so far as the complaint shows, the defendant, on refunding the money

received from the intestate, will be in as good a condition as it was in when the agreement was made. If, by reason of any fact not appearing in the complaint, the defendant can not be restored to its former condition, such fact is matter of defence to be set up by answer. If these views are correct, the question whether the plaintiff can recover in an ordinary action at law for money had and received is not very material. Upon the facts stated in the complaint the court may exercise its equitable jurisdiction, by avoiding the contract, and directing the defendant to refund the money received from the intestate, or so much thereof as remains unrefunded, after crediting the defendant with all it had paid under the agreement. Under our present system of pleading, relief is to be given consistent with the facts stated, although it be not the relief specifically demanded.

But whether this action be regarded as one for equitable or legal relief, it seems to us that the widow of the intestate is a necessary party. Upon the facts pleaded, we regard the agreement not as absolutely void, but voidable, upon proper terms and at the suit of the proper parties. By the terms of the agreement as set out in the complaint, the defendant, after the death of the intestate, was to pay the interest money to his administrator for the benefit of his widow, *or* directly to his widow and sister for their benefit during their respective lives. Had the money been made payable to the administrator exclusively for the benefit of the widow, the administrator alone might have maintained the action without joining the beneficiary. (Code of Civ. Proc., § 449.) But it is payable in the alternative to the administrator for the benefit of the widow, or to the widow directly, for her use during life. The object of this provision is not entirely clear, but obviously it gives an option either to the widow to demand and receive the money without the intervention of the administrator, or to the society to pay directly to her if it chooses. In either case, the widow has a direct interest in the money due under the agreement, and it is difficult to see how the agreement can be avoided, or the principal money ordered to be restored, in an action to which she is not a party. She might properly join with the present plaintiff in prosecuting the action, but if she should refuse to do so, she should then be made a defendant.

The fact that she consented that the written assurance of the defendant, and her claim based thereon, might be surrendered, is no answer to the demurrer. The offer of surrender not having been accepted, her interest is the same as if the offer had not been made. Her consent to a surrender was not a release or an assignment of her right. We think she is a necessary party.

The point that the representatives or next of kin of the sister should have been made parties, has not been argued by the appellants's counsel. It is enough to say that the complaint alleges that she died " shortly after " the death of the intestate, and it does not appear that any interest money accruing after his death, had matured before she died. As her right to the money ceased upon her death, her representatives or next of kin have no interest in the subject-matter of the action.

Upon the ground above stated, the judgment and order appealed from should be reversed, and judgment ordered for the defendant on the demurrer, with leave to the plaintiff to amend the complaint within twenty days, on payment of the costs of the demurrer and appeal.

TALCOTT, P. J., and HARDIN, J., concurred.

So ordered.