Daniels, J.
By the judgment which has been recovered a deed of property was declared fraudulent and void, which was subscribed and delivered by the plaintiff’s father, and the defendant’s husband, to Eliza H. Hobart for its conveyance to the defendants. This deed was immediately followed by the execution and delivery of the deed by Hobart to the defendant, but the right of the plaintiffs to maintain the action depended upon the capacity, or competency, of the grantor in the first deed to make and execute it. The defendant was not the mother of either of the plaintiffs, but they were the children of her husband by a previous marriage. And in support of their action they alleged the mind of their father to have become so much impaired as to render him incapable of executing or delivering the deed. And it was further alleged that it was in fact obtained from him by the undue influence of the defendant over him. The evidence which was given upon the trial, had a direct tendency to bring this case within the legal rule settled by Jackson v. King (4 Cowen, 207), Blanchard v. Nestle (3 Denio, 37), and Allore v. Jewell (94 U. S., 506, 510-511. But whether it was legally sufficient to maintain the action, will not now require to be decided, for evidence was received upon the trial directly tending to *587 maintain the action, from witnesses who were not competent to give it.
The witness, Eliza H. Hobart, after mentioning certain acts and conversations of the grantor in the first deed was asked: “From what you saw of Hr. Yeandle, or his conversation that you heard, what impression did you get as to his mental condition?” This was objected to on the ground that the witness was incompetent to give an opinion. The objection was overruled and the defendant excepted, and the witness answered, “weak.” She was asked the further question: “Was the impression left on your mind at the time that he was incapable of transacting business himself; what impression was made upon you at that time ? ” This was, also objected to, for the same reason, but the answer was allowed to be given, to which the defendant excepted. And the witness stated: “My impression was that he was not capable of managing his affairs.”
Celeste H. Cook, another witness for the plaintiffs, was asked: “From all you heard of Mr. Yeandle’s conversations, or all you saw of his acts, what impression was made upon you as to his mental capacity ? ” The same objections were made to the witness answering this question, but she was allowed to answer and the defendant excepted, and her answer was, “very weak.” This was followed by the question: “ What you heard of his conversation, and what you saw of his acts, did they make any impression upon you as to his capacity to do business, and have charge .of property ? ” The same objections were made and the same ruling as to this question, and the defendant in like manner excepted, and the witness answered: “I don’t think he was capable of it.”
John H. Dayton, who was another witness examined on behalf of plaintiffs, was asked: “What impression did his appearance, conversation and acts at the time you saw him in the fall of 1880 or 1881 leave upon your mind as to his mental capacity and qualifications to attend to any business transactions?” An exception was taken to the decision overruling the same objections to this answer, and the witness replied: “I thought the man was breaking all away, giving up. I saw him a year after that again; he didn’t know me at all.”
William W. Ford, another of the plaintiff’s witnesses, was asked: “Did those circumstances which you have spoken of leave upon you an impression whether or not his manner, etc., was due to imbecility of mind, or merely old age?” A. “Yes.” ,Q. “What was that impression?” After the same objections and ruling the witness answered: “The impression is that he was very simple and childish.” *588 The same witness was asked, upon his re-direct examination, whether the forgetfulness he had mentioned left upon the mind of the witness “any impression as to whether it was imbecility or not?” A. “It did.” Q. “What was that impression?” This was in like manner objected to, and the witness was allowed to answer and the defendant excepted, and the answer given was: “ The impression was that it was that of imbecility.”
Similar questions were asked of the witness Adilade A. Yeandle, who answered, under like exceptions and objections, the question, “ What was that impression, that he was imbecile or strong-minded,” and her answer was “Imbecile.” And similar questions were answered in the same manner by the witness George W. Yeandle.
Neither of these witnesses was an expert, and for that reason they were not permitted, by the established rule of evidence, to make the general answers which they did upon the trial. All that they could be legally asked or permitted to answer was the question whether the acts or the conversations related by them, were rational or irrational. The questions were required to be addressed particularly to such acts and declarations as were mentioned by the witness and the answers in like manner restricted. This was the rule declared in Clapp v. Fullerton (34 N. Y., 190); O’Brien v. People (36 id., 276, 282); Rider v. Miller (86 id., 511); Matter of Ross (87 id., 514); Holcomb v. Holcomb (95 id., 316), and Real v. People (42 id., 270). These answers had a direct and material bearing upon the fact in issue between the parties. And, as they were erroneously received by the court the judgment should be reversed and a new trial •ordered, with costs to abide the event.
Brady and Bartlett, JJ., concur.